In the next case, it's Chemence Medical v. Dr. James Quinn. Mr. Terry is here for Chemencey, Mr. Egan for Dr. Quinn, Mr. Terry, you may begin when you're ready. May it please the court, my name is Michael Terry and I represent the appellants. The most important issue in this case is whether the alleged oral renewal of an expired three-year written contract resulted in a new enforceable contract for commissions. Under well-established law, it did not and Judge Pinnell, the district court, erred in not granting the motion for judgment as a matter of law. Chemence Medical Products entered into a written contract with Dr. Quinn effective January 31, 2004. Now, that contract had two distinct elements. In Section 2.1, it had a three-year consulting agreement with a payment of $4,000 a month. That amount was payable without regard to sales, without regard to whether Dr. Quinn helped with any specific product. It was paid every month for three years automatically without invoice. The contract was the documentation that supported the monthly payments. Second, in Section 3.1, the written agreement contained a commission agreement providing that for products on which Dr. Quinn's services during the three-year term resulted in new customers, new applications, or increased sales to existing customers, he would receive commissions for 10 years or the commercial life of the new product. All right. Now, the jury heard all these arguments and found that there was a breach of an oral contract and awarded him $8 million that he gets in addition to the $4,000 per month. And so, you've raised several issues. The court should have granted your motion for judgment notwithstanding the verdict. You've got several issues. Which is the strongest? I think the strongest and certainly the most important because it affects the $8 million and not the other little smaller items and damages is the fact that this agreement was within the statute of frauds. It was within no exception to the statute of frauds. Thus, it was error to allow the jury to make an award under a contract that's unenforceable. All right. Well, I have in front of me Parker v. Kreider. This is a Georgia Supreme Court decision that Justice Benham wrote and he says here, a contract of employment for an indefinite duration, which we have here, is an agreement capable of being performed within one year and the possibility of performance of the contract within the year is sufficient to remove it from the statute of frauds. The number of years the parties operate under an employment contract of indefinite duration does not affect the applicability of the statute of frauds. That seems to end the matter. Not at all, Your Honor.  This was a contract for three years. The testimony from Dr. Quinn was that . . . Was it capable of being performed within a year? No, Your Honor, and the Georgia Supreme Court has made this very clear and this case is in our brief. Why wasn't it capable of being performed within a year if, after the written contract expired, they just stopped consulting with them after a few months? Because that is not what Dr. Quinn alleged happened and that is not as far as the agreement. What Dr. Quinn said is . . . Dr. Quinn said, after the written agreement expired, it continued for an indefinite period. No, Your Honor, that is not what Dr. Quinn testified. Dr. Quinn testified there was a renewal of all of the provisions. For how long? For how long? All of the provisions includes three terms of years that are in the written agreement. Number one, a three-year term. Number two, a 10-year commission agreement. Now, he calculated his damages in this case. He said that his agreement with, I guess, who is it, Mr. Wilson? His agreement with Mr. Wilson in August 2007. Was that it would continue for another three-year period? He said we renewed all provisions of the original written agreement. That had three terms of years contained within it. It had three terms of years and he used those to calculate his damages. Now, you can't say, I'm adopting all provisions of the agreement that had three different terms of years contained in it. But those terms of years that go way beyond one year and put us within the statute of frauds don't matter for an oral renewal, but I'm going to use those terms to calculate my damages. He used the 10-year commission agreement to calculate his damages. Now, if the 10-year commission agreement . . . Well, Your Honor, he had no right to any future commissions for any term of years without a written agreement giving him that right. In other words, you can't say, I have an oral month-to-month employment agreement and because of that, I get commissions for 10 years, which is what the written agreement said, but I'm not really relying on that 10-year provision, I'm just using it to calculate my damages. Help me with the record just a little bit. I have read the jury instruction. Yes. I've looked at the verdict form and I've read quite a bit of the charge conference. Judge Black, I can't hear you. Oh, I'm sorry. I have read the jury instruction. I have read the verdict form and I've read, I think, most of the charge conference. Can you tell me where in the record you objected to the charge the judge gave? I don't believe that we objected to . . . Which charge are you talking about, Your Honor? Any charge. No, Your Honor, I don't think so. Tell me where in the record you objected to the verdict form. I don't believe that we objected to the verdict form. And if we read the charge and know how the jury was charged, why couldn't we determine then that the jury was given a correct charge, there was no objection to it, and that they made the findings of fact necessary in order to support that conclusion of law? Because as a matter of Georgia law, the evidence was insufficient to support that finding. And as a matter of Georgia law, Your Honor, I would cite the court . . . Why didn't you object to the jury charge? It is a correct statement of the law, Your Honor, and we certainly, you know, we move for a judgment as a matter of law on this. But the jury charge was a correct statement of the law, and we did move for a judgment as a matter of law saying there's not enough evidence. The judge said I'm going to put it to the jury. If he puts the issue to the jury, he has to make that charge. He has to give that charge. We believe he was wrong in submitting the issue to the jury. But the issue that the court raises about could be performed within a year is addressed by the White v. Simplex Radio case, Your Honor. And what that case says is, yes, you can have an agreement for an indefinite period, and you can have a long-term agreement that could be shortened to under a year by the occurrence of subsequent events. But if the agreement states a term of years greater than one year, even though there could be subsequent events, such as termination, as you said, Judge Wilson, he walks out, he quits, that does not take it out from under the statute of frauds. What court returned that opinion? White v. Simplex Radio, 188 Georgia, 412, cited in our briefs. And Your Honor, the distinction between this case and the Parker case is, and White makes this very clear, and it lists a number of Georgia cases that have the same holding as Parker. It's not a Georgia Supreme Court case like Parker is. Yes, it is. It is? Okay. Yes, it is. It is earlier than Parker, but it distinguishes other cases with the same holding as Parker. Can I tell you something? All right. This went to the jury. There was a general issue about the oral contract. And it wasn't limited to the fact that there was a dump in an employment period. It was basically, is there an oral contract? And the charge included the part performance and performance aspects? Yes, Your Honor. So, we don't know exactly what the jury concluded, but it made a determination that covered everything. And so, only if there was insufficient evidence could you succeed. That's correct. Because they have a wide open finding. Well, they have a wide open finding of two things. Either it's not within the statute of frauds, or it is within the statute of frauds, and they prove part performance. Now, they didn't prove part performance. They didn't come close to proving part performance. To prove part performance under Georgia law, you have to show two separate things. I know. Consistent and not inconsistent. Not inconsistent. And they're not inconsistent. They fail case after case after case. I would cite the case, the Court to the Alcoril, the Studdard, and the Payne cases as the three most directly on point that prove Alcoril. Alcoril, you had an employment agreement, and they had a written bonus plan that expired after 1987, claimed to be an oral extension of the written bonus plan. And the party continued to serve, continued to get his payment. The oral extension of the written bonus plan was sued upon when it wasn't honored. And the Court said no. The part performance, continuing to work, is totally consistent with that contract. But it's not inconsistent with a contract where you just get your salary and you don't get a bonus. Isn't it for the jury to decide what needs to be part performance in this case, whether he performed the contract or not? Or how about full performance? No. Why isn't it full performance? Well, Your Honor, it's not full performance because it doesn't qualify under that either. Full performance, and there are three Georgia cases that say this, full performance also requires that the performance be not inconsistent with the absence of an agreement. Isn't that a factual determination for the jury as to whether it's not inconsistent? Your Honor, it can be. And there are cases saying this was for the jury. But in all of the cases that we cited, in Alcoril, in Payne, and in Studdard, they said it was not for the jury. That as a matter of law, that the performance was, for example, where you have an agreement to take out four loans, and then it expires, and you take out one loan and say that's part performance, and we had an oral agreement to renew. They said that's an oral agreement within the statute of frauds, unenforceable, and the part performance is not inconsistent with the absence of an agreement to make four loans. So every element has to be evidenced by part performance. Yes, Your Honor. I know your time has expired, but I actually thought your strongest argument was the exclusion of Robert Wilson as a witness. And so I'll just give you a few more minutes. Okay. Why, I mean, if he was such a key witness, he was a party to the agreement. Why did you state initially that you didn't intend to call him as a witness? Because no such conversation ever occurred. Our party had no idea that there was even, I mean, there's... Well, it seems like you would put him on the witness stand, you would want to put him on the witness stand to say that. And as soon as there was testimony, as soon as we had testimony of Dr. Quinn saying there was this August conversation, they didn't even, I mean, they talked about this was orally renewed in January. They changed their testimony. Okay. They changed. He said his original testimony was it was renewed. Well, they put this in briefs early on that there was a contract. Okay. So it was before the deposition. They put it in their briefs that there was a contract soon after the other one expired. Now soon ended up not being January, but being August. All right. How soon, whatever. There were briefs saying there's this agreement. So why isn't Wilson, you know, listed as a witness as soon as that kind of briefing occurred? Certainly, Your Honor, I wish that he had been. But the simple fact is he was listed by the other side. And we cited cases in our brief that says there's no prejudice where they listed him as a person with knowledge. He was deposed within the discovery period. He was a person of knowledge, not as they're going to call him as a witness. It's two different things, isn't it? But the disclosures are to disclose the people with knowledge. And so he's disclosed. And you're saying he's he's the question is put to him. Are you going to be a witness? He's doing all this, right? He's doing all the pre-trial stuff. And he says, no, correct. He did say no. But number one, Your Honor, he did not at that point in time actually think that that would be necessary to come in and refute an oral, unenforceable representation that under the Georgia statute of frauds means nothing. But remember this. Long before the discovery period ended, he was listed. Long before the discovery period, he was deposed. Long before that, he was identified by them. So there's absolutely no prejudice in the cases we cited, say, particularly prejudice. If here he is at the beginning of the case, when minds are fresher, saying I'm not going to testify, he's deposed down the road. When he's finally listed as a witness, isn't that when he was deposed? He was. OK. So he might have been deposed earlier. He could have been deposed early, except discovery stayed for two years. There was a two-year stay of discovery in place. So discovery was not occurring during that time period. But Your Honor, the simple fact of this is we have the key witness to the crucial fact in this case. Did this conversation occur at all? Was he even authorized to make such a contract? Did he have the conversation? And he's excluded where they identified him as a witness, where he- Wait just a second. They identified him as a person with knowledge. As a person with knowledge. We, as a precipient witness, and we identified him within the discovery period. He was deposed within the discovery period. And the simple fact is that he should not have been excluded as a witness for that reason. And Your Honor, one of the things to keep in mind is under the Georgia Rule of Professional Conduct, which is what governed, he's perfectly allowed to serve as counsel up until this  So, I mean, their argument is to prejudice, so he was serving as counsel. But Rule 37 says he can do that. You can serve as counsel except at trial. And all the way up through the beginning of trial. Well, the district court is certainly not limited to what is ethical under the rules in deciding whether this is prejudicial or not. I do agree with that, Your Honor. But I think given the importance of the testimony, the finding of prejudice here, frankly, should have gone the other way. Thank you. Thank you for your argument, Mr. Terry. We'll hear from Mr. Egan. As we were on that topic, maybe you would start with that because I wasn't clear what the prejudice was. Your Honor, I'll be glad to start with that topic. We'll start with Mr. Wilson as witness. I'm sorry. I didn't even let you say your name. And I'd like to start first with correcting a few things. Just some things that were said at the end there. There was the comment that he was deposed long before the end of discovery. In truth, he was deposed during a 30-day extension that Judge Pinnell granted because he had had to grant a motion to compel the production of documents. And that extra 30 days was for Dr. Quinn in order for him to be able to depose people again because of documents that had not been produced originally in the case. That's number one. Number two, this business about the case being stayed for two years had nothing to do with this. The case was stayed for a good period of time while an arbitration went on in California. But that did not impact this business about Mr. Wilson at all. What Mr. Wilson was about, and the court has properly identified this, is that when you make a representation to the United States District Court that you are not going to be a witness and that it is not necessary for you to be a witness. He doubled down on that. He- Well, wait a minute now. They said should the intention change, then Attorney Wilson will voluntarily withdraw and not try the case. So they clarified their comments. They indicated that we might change our minds in the future. They said that at the very beginning. Your Honor, they clarified that yet further. And when they clarified it further was in a surreply. And Judge Pinnell's order excluding this witness actually makes that point, that they changed it from a softer, we will let you know if we intend to change our mind about it, to he will not testify and he is not necessary. And what happened in the intervention between those two, the surreply and when the original reply was that we submitted the affidavit of a professor of ethics of Mercer University Law School, Professor Longin. And just as Your Honor identified, Professor Longin talked about the fact that there had already been in the counterclaim, there had already been in the preliminary case statement, all of this identification that Dr. Quinn was going to say there was an oral contract and that it was made with Mr. Wilson. And so- And see, you know, I understand that, you know, this is a decision that's vested within the sound discretion of the trial judge, but this is such a key, this is the most critical witness in the case. It's their key witness to contradict the testimony of Dr. Quinn with regard to what their oral agreement was. There were only two parties who actually knew what the conversation was and Mr. Wilson was one of them. Your Honor, first, the first and most important thing I can say is the identification of the standard of review. The standard of review is abuse of discretion. Right. This is a trial judge- A trial judge can't abuse his discretion. Certainly, that is true, as Your Honor asked as well. So show me he didn't abuse his discretion. Tell me exactly how you were prejudiced. That's what I asked originally. How were you prejudiced? The way in which we were prejudiced, Your Honor, is because discovery would have been tremendously different. If what the problem was, they said he's not going to be a witness. Now, we cannot depose him. If we had been able to depose this gentleman, we would have been able to ... There are two elements of prejudice. Wait just a second. Just because somebody is not going to be your witness doesn't mean you can't depose him if he has information. Your Honor, I think it would have been extremely difficult for us to depose Mr. Wilson when he represents the other party in the case. He had said he's not going to be a witness and that he's not necessary. There are really two things that are the prejudice. Then I want to go back to part of the question you asked, Your Honor. Yeah, what's the prejudice? Okay, I'm just going to write it down. You're going to tell me prejudice and I'm going to write it down. All right. So number one is that we would have deposed him earlier. It would have changed the order of discovery. That would have made a huge difference in this case. One of the things it would have made a difference on was this point about was the conversation either in January or in August about the oral agreement. Because they had not produced, the commence parties had not produced the emails that were the ones that caused Dr. Quinn to remember, yes, I was working on the WMR project with Mr. Wilson. When I was working on that WMR project, this email reminded Dr. Quinn and he said, so that conversation took place in August. When they deposed Dr. Quinn, and they deposed him in June of 2014, he did not have that document. He did not have the benefit of the deposition of Mr. Wilson. Mr. Wilson, by contrast, had the benefit of being in all of the depositions. And so that's one point, Your Honor. And then what is the reason, second reason for prejudice, and this is really so important, and that is that it is not ethical nor permitted for a lawyer to confuse the roles of advocate and witness. Because it's difficult for the jury when that happens. And yet, so Mr. Wilson, so he's still going to be the lawyer in the case, he deposes Dr. Quinn. Is there a Georgia rule of professional responsibility that prevents counsel in a case from being a witness at trial? There is. It's Rule 3.7, Your Honor. That is the rule. And it's the Cloth case, Cloth v. Richelieu. And in Cloth v. Richelieu, there is this very important point. It makes- I disagree about that. You understand that. There's a rule, a Georgia rule of professional responsibility? There is. Yes, Your Honor. All right. There is. And that rule, let me make this really clear. They cited Cloth and they cited the Drost case. Both of those cases stand at least in part for the proposition that if a lawyer is going to be taking depositions in a case, he should not be, or she, in both roles. You cannot be advocate and witness if you're taking the depositions in the case. And then- Sorry, Your Honor. Is my understanding incorrect that he was not going to try the case if he was going to be permitted to be a witness? He never, Mr. Wilson actually never withdrew. But what happened is that after this case had been pending almost five years, Mr. Wilson identified that he was going to be a witness on October the 27th, 2014, and that he would attempt to withdraw. But he actually never withdrew. Judge Pinnell made that observation. And, Your Honor, I left off on that. Counsel, let me make sure I have the facts. In 2011, Mr. Wilson said that he was not going to be a witness. And in 2012, there was a motion to disqualify and he said he had no intention of being a witness. And during this period of time, he was the attorney taking the deposition of the witnesses, including Dr. Quinn, in the case. Is that correct? Yes, Your Honor. Thank you for that. So, he was the attorney taking all of the depositions of the witnesses. If he had been listed as a witness in 2011, would he have been permitted to take all the witnesses? No, Your Honor. No. And that really illustrates my point that I was just attempting to arrive at. So, he said, I'm not going to be the attorney in the case, so I am going to take all the depositions, including opposing party, of all the witnesses. And then, in 2014, he said, I am going to be an attorney, a witness in the case. Is that pretty much it in a nutshell? That is, Your Honor. Thank you. And that really describes it very well. And if I could... He can't be the attorney, although I think it's a little strange. He can be the pretrial attorney under Georgia law, even though he's going to be a witness. But you say there's something that prevents him from, as pretrial attorney, doing the actual depositions. Yes. And what is that? Well, first of all, it's two cases that say it. And second, though, the real thing is, but why? Why would that be the law? And the reason is because of the confusion between role as witness and role as advocate, a problem which manifested itself in this very trial. Your Honor, in the Cloth case, that's the Georgia decision. There's a parenthetical, Your Honor, and that parenthetical of a case that they cite says, However, you can't be taking the depositions. Yes, you can serve as the pretrial lawyer when you're going to testify eventually, but you can't be taking depositions. That's in Cloth. It's also in the Drost case. The Drost case makes the same point, that under this rule of professional responsibility, Your Honor, that says a witness cannot also be an advocate, which is the Georgia rule. That's the rule. That, nonetheless, there is an exception to that idea, and that exception is this taking of depositions. Okay. Can I change to a whole other topic? I want to change to a whole other topic. And the whole other topic I want to talk about is the exclusion of their damage witness. And I did not understand why he could be totally excluded when the problem was these regulatory costs. And some of the products didn't have regulatory costs, and all the damages were calculated product by product. So it seems to me that at least he should have been admitted for some products. And then, isn't it really a factual question as to whether these are direct costs or not? I mean, if you have to sterilize stuff, it sounds pretty direct cost. If you just have to go talk to the FDA, maybe that's not a direct cost. But the total exclusion of Coleus, I really don't understand this. So you tell me exactly why the district judge did not abuse his discretion in totally excluding the testimony of Mr. Coleus. The district judge did not abuse his discretion because Mr. Coleus really threw in the kitchen sink and overhead. If it were just FDA, which is what they wrote in their briefs, but is not correct, that just isn't true. What Mr. Coleus was trying to throw in were such things as research and development costs, other costs such as order entry and scheduling, receiving and shipping. He had, in addition, regulatory and document control costs, packaging supplies. All of these in a contract definition that was direct labor to manufacture. So it was direct raw materials to manufacture plus direct labor to manufacture. And so he just threw in the kitchen sink. And of course, the reason was obvious, that would really drive down the rates of commission. That's what they were attempting to do through that. And then, Judge Pinnell, he conducted three days of Darbert hearings. This is a trial judge that's been on the bench 37 years. 17 is a United States District Court judge. Well, I've been on the bench 35 years. It doesn't make me that smart. I'm not buying this 37 years. And so what happened is that Judge Pinnell really engaged in sifting examination of Mr. Coleus and said, you are using a third factor. What was the third factor? Prime cost. That's what he used. And so he actually admitted to the judge that, well, there are three factors here. I was using not the two factors of the contract, but three factors. What was that third factor? Prime costing. And if you threw in things like maintenance of equipment, if you threw in things like, as we said, research and development would drive it way down. And really, when one looks at it, what Mr. Coleus was doing was throwing in things that just were not direct labor. And they never redid his numbers. They had their CFO on the stand. They had their controller on the stand. They did not have them testify to a number that was a gross margin. And so that was a huge difference. I hope I've addressed the court's question. I do want to hit, in my time left, two or three more quick points, if I could. First of all, Justice Benham, Crider Poultry, that's completely correct. This case is not within the statute of frauds. It's outside of it. Even if it were, all those land cases that they cite, they don't have anything to do with- Well, just a second. It's not a case where he's just an indefinite term of employment. He says, we orally renewed the written contract. And that has terms in it, including the 10-year commission term, which the jury decided started with the commercial viability of the product. So he's not just employed for an indefinite period of time. He says, we renewed the contract. Your Honor, record, transcript, page 452. And there you will see that Dr. Quinn was very careful, under Mr. Wasserman's questioning, to say, I wasn't renewing this contract. We had, and he actually says it at page 452. That was one of the things that was referred to by Mr. Terry that, I'm sorry, but just isn't accurate. What Dr. Quinn said, always said, the only thing he said was, we agreed to continue operating underneath the original agreement. And when he was asked things like, he was actually asked, well, you renewed this? No, he didn't say it was a renewal. That's not what was the testimony at trial. And it's important because what they said, until we can get around to having a new agreement, this was a contract of indefinite duration. How long would the three-year period for non-competition last? Well, what would occur, he was asked, would I be under the enforcement of the non-competition? He said, yes, I would be bound by that. But what he was saying is, it would always run from whenever they decided to stop the agreement or do a new one. So in other words, either side could terminate. So Dr. Quinn, in fact, could not compete for three years after April the 11th, 2011, when he quit. And so that's that point. May I address one other point? What about the 10-year agreement? I beg your pardon? What about the 10-year agreement? That was that the commercial life of the products were to be 10 years. If I could address one more. I'll give you one more minute. Thank you, Your Honor. I'm going to go back to this question about Mr. Wilson, because back to this question of depositions, Your Honor, Judge Pinnell had Mr. Wilson in front of him several times. He had an opportunity to judge about him. We had two motions to compel granted against them with regard to discovery process. We had an order entered in the case that no lawyer, witness, or party could be arrested by the other side because they had Dr. Quinn arrested out of a deposition for trade secret theft. Those charges have been dismissed for warrant of evidence, but had him arrested. And so when Judge Pinnell was making this decision here in this case, he knew a lot about Mr. Wilson. And what was the additional prejudice? It was that at trial, they actually impeached Dr. Quinn with the words of Mr. Wilson. You, Dr. Quinn, say you had a conversation with me, Wilson, that's me, on such and such a date, and they impeached him with that. And that is the confusion of the roles of witness and advocate. That's what the law won't permit. And no one should be permitted to go for two years saying, I'm not going to be a witness, and then they decide to be one. All right. To the harm of Dr. Quinn. Great. I love your argument, Mr. Egan. Thank you. Thank you very much. All right. Mr. Terry, you've reserved some time. Yes, Your Honor. Thank you. Mr. Quinn never stated before the jury at trial that the original contract was renewed. He never used those words, did he? No. He said all of the provisions of the written contract are what we were working under. All of the provisions includes the three-year non-compete. You just heard that the three-year non-compete was enforceable, and it would start at the termination of his employment years down the road. That alone required a writing. To have an enforceable three-year covenant not to compete starting at the end of even at-will employment requires a writing. That is within the statute of frauds alone. The ten years that they relied upon, he says, well, that was the commercial life of the contract. The contract said ten years or the commercial life. They used ten years, the contract term. He used the three-year. He says, I renewed, he said, we may have this agreement, oral agreement in August of 2007. And he used the three-year term that he says now didn't exist to sweep in Dermaflex Plus QS, which was approved by the FDA in July 28, 2010. If he hadn't had that three years, he couldn't have included that product. So he uses three different terms of years, but then says they're not enforceable. But his testimony was all of the provisions of the written agreement were what we were working under. Now, let me go back for a moment to Mr. Wilson. We heard that he got to attend all of the depositions. He got to sit through all the depositions and Dr. Quinn didn't. Well, Dr. Quinn, as a part, he could attend any deposition he wanted to. You know, we heard, well, he was at trial. Well, that's because the judge wouldn't let him testify. He's perfectly entitled to be an attorney at trial if the judge refuses to allow him to testify. Is it true that he's not permitted to take the deposition of a witness if he's going to be a witness? That is news to me. Can I say there's not a parenthetical in one of those cases that says that? I can't. I will say this. They've never cited it. They didn't cite that case in their brief. You would think if it said that, they would have cited that in their brief. What the Clough case says is Rule 3.7 does not preclude a lawyer from representing a client prior to trial, even if the lawyer is likely to be a necessary witness at trial. That's what Rule 3.7 says, according to Clough. Frankly, this is the first I've heard about a parenthetical distinguishing depositions. Can I represent from my perfect memory that that's not somewhere in that case? No, Your Honor, can't. But the court is certainly capable of looking for that. But the simple fact is the deposition wasn't played. That deposition was never put before the jury. So there's no confusion of the role of witness and advocate from taking the deposition. That's what he said is there's a confusion of the role. But the jury never heard or saw the deposition of Dr. Quinn. It was not played. Dr. Quinn testified live. So the prejudice to us from not being allowed to call the single-percipient witness to an enforceable oral conversation is enormous. And the prejudice to them is, quite frankly, tangential. They're claiming that there'd be confusion as to the role in a deposition that the jury never saw or heard. Well, just a second. I take it that the statement in the deposition was used for impeachment, even if the deposition itself wasn't used. In cross-examination, did somebody... I don't know whether the deposition was ever used for impeachment. The problem with having the attorney... The statement, didn't you say once upon a time that the contract was this date, and now you're saying this date? But Your Honor, using that to impeach a witness in no way confuses the role. It's not like you're showing the videotape where you're seeing that it's that attorney. There's no indication that it's that attorney doing the questioning. But the fact that he was not allowed to testify allowed him to appear as counsel at trial. He was perfectly allowed to do that once he was not allowed to testify. But he should have been allowed to testify. All right. We have your argument, Mr. Egan. Thank you. Oh, Mr. Terry.